SEDGWICK LLP
JAMES J.S. HOLMES  Bar No. 126779
james.holmes@sedgwicklaw.com
MATTHEW FISCHER  Bar No. 191451
mathew.fischer@sedgwicklaw.com
JASON M. JOYAL  Bar No. 251168
jason.joyal@sedgwicklaw.com
JIA-MING SHANG  Bar No. 233326
jiaming.shang@sedgwicklaw.com
801 South Figueroa Street, 19th Floor
Los Angeles, California 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921

Attorneys for Defendant
MAXFIELD & OBERTON HOLDINGS, LLC

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| THE ESTATE OF BUCKMINSTER FULLER, <br><br> Plaintiff, <br><br> v. <br><br> MAXFIELD & OBERTON HOLDINGS, LLC, A Delaware Limited Liability Company, <br><br> Defendants. | CASE NO.:  CV 12-2570 LHK (HRL) <br><br> **DEFENDANT MAXFIELD & OBERTON HOLDINGS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> **[Filed concurrently with Request for Judicial Notice; Declaration of Craig Zucker; and [Proposed] Order]** <br><br> **Date:  August 23, 2012** <br> **Time:  1:30 p.m.** <br> **Dept.: Courtroom 8** <br><br> Complaint filed: May 18, 2012 |

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 23, 2012, at 1:30 p.m., in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, Defendant Maxfield & Oberton Holdings, LLC ("MOH") will, and hereby does, move this Court for an

order dismissing all causes of action set forth in Plaintiff The Estate of Buckminster Fuller's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

MOH moves to dismiss all of Plaintiff's causes of actions asserted against it on the grounds that Plaintiff does not possess any rights in the name "buckyballs" and MOH's Buckyballs® products are transformative works protected by the First Amendment and California Constitution. Additionally, MOH moves to dismiss Plaintiff's: (1) Invasion of Privacy and Civil Code § 3344.1 claims on the grounds that they are barred by the public interest defense and the applicable two-year statute of limitations; (2) Civil Code § 3344.1 claim on the grounds that it is barred by the statute's "public affairs" exemption and fails to meet a fundamental pre-litigation predicate; (3) Lanham Act Unfair Competition claim on the grounds that MOH's use of Plaintiff's name is a nominative fair use protected by the First Amendment; and (4) Business and Professions Code § 17200 claim on the grounds that it is substantially congruent and derivative, and fails for the same reasons as the other claims.

For each of these reasons, MOH respectfully requests that the Court grant this Motion and dismiss Plaintiff's causes of action against MOH with prejudice.

This Motion is based on this Notice, on the attached Memorandum of Points and Authorities, on the concurrently-filed Request for Judicial Notice, the Declaration of Craig Zucker and the attached exhibits, all pleadings, files, and records in this action, and on such other argument as may be received by this Court at the hearing on this Motion.

Dated: July 13, 2012                 SEDGWICK LLP


By: /s/ *Matthew Fischer*
James J.S. Holmes
Matthew Fischer
Jason Joyal
Attorneys for Defendant MAXFIELD &
OBERTON HOLDINGS, LLC

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

    A.  The Scientific History of "Buckyballs" .................................................... 2

    B.  The Buckyballs® Desk Toy ....................................................................... 3

    C.  The Estate of R. Buckminster Fuller ......................................................... 4

III.  LEGAL STANDARD ......................................................................................... 5

IV.  THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY
BECAUSE PLAINTIFF DOES NOT POSSESS ANY RIGHTS TO THE
NAME "BUCKYBALLS" ..................................................................................... 6

V.  THE FIRST AMENDMENT BARS ALL OF PLAINTIFF'S CLAIMS
BECAUSE ANY USE OF PLAINTIFF'S NAME OR LIKENESS IS A
PROTECTED TRANSFORMATIVE USE ......................................................... 6

    A.  Mr. Fuller's Likeness is Not the "Sum and Substance" of the
Buckyballs® Products ................................................................................ 8

    B.  Buckyballs® Are Presumptively Transformative Because Their
Marketability and Value Are Derived From Their Functionality as a
Toy, Not From Plaintiff's Name ............................................................... 10

    C.  Plaintiff's Claims, if Successful, Would Result in Unjust and
Unanticipated Consequences ..................................................................... 11

VI.  PLAINTIFF'S STATUTORY AND COMMON LAW
MISAPPROPRIATION CLAIMS ARE INDEPENDENTLY DEFICIENT .......... 12

    A.  Plaintiff's Statutory and Common Law Misappropriation Claims are
Barred by the Statute of Limitations .......................................................... 12

    B.  Plaintiff's Statutory and Common Law Misappropriation Claims Are
Barred by the Public Interest Defense ....................................................... 13

    C.  Plaintiff's Statutory Misappropriation Claim Is Barred by the Statute's
"Public Affairs" Exemption ...................................................................... 15

    D.  Plaintiff's Statutory Misappropriation Claim Is Deficient Because
Plaintiff is Not the Successor in Interest to the Rights of "Buckyballs" ...... 16

VII.  PLAINTIFF'S LANHAM ACT UNFAIR COMPETITION CLAIM IS
INDEPENDENTLY DEFICIENT UNDER THE NINTH CIRCUIT'S
NOMINATIVE FAIR USE TEST .................................................................... 16

    A.  "Buckyballs" and "Buckminster Fuller" are Not Readily Identifiable ......... 17

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

B.  MOH Uses No More of Plaintiff's Name and Likeness Than is
    Reasonably Necessary ........................................................................ 18

C.  MOH Does Nothing to Suggest Sponsorship or Endorsement ............................ 19

VIII.  PLAINTIFF'S CALIFORNIA UNFAIR COMPETITION § 17200 CLAIM
       FAILS BECAUSE IT LACKS A PREDICATE VIOLATION ....................................... 20

IX.    CONCLUSION ........................................................................................... 21

Cases

*Abrego Abrego v. The Dow Chem. Co.*
    443 F.3d 676 (9th Cir. 2006) ................................................................... 5

*Alberghetti v. Corbis Corp.*
    713 F. Supp. 2d 971 (C.D. Cal. 2010) ..................................................... 12

*Ashcroft v. Iqbal*
    129 S.Ct. 1937 (2009) .............................................................................. 5

*Barnett v. Evans*
    2009 WL 799402, at *4 (N.D. Cal. Mar. 24, 2009) .................................. 5

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................. 5

*C.B.C. Distribution and Marketing v. Major League Baseball Advanced Media*
    505 F.3d 818 (8th Cir. 2007) .................................................................... 14

*Cairns, et al. v. Franklin Mint Co., et al.*
    292 F.3d 1139 (9th Cir. 2002) ............................................................ 17, 18

*Christoff v. Nestle USA, Inc.*
    47 Cal. 4th 468 (2009) .............................................................................. 12

*Clark v. America Online, Inc.*
    2000 U.S. Dist. LEXIS 17368 (C.D. Cal. Nov. 30, 2000) ................ 17, 18, 19

*Cleary v. News Corp.*
    30 F.3d 1255 (9th Cir. 1994) .................................................................... 20

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*
    25 Cal. 4th 387 (2001) ..................................................................... 7, 8, 9, 10

*Dora v. Frontline Video, Inc.*
    15 Cal. App. 4th 536 (1993) ............................................................... 13, 15

*Eastwood v. Superior Court*
    149 Cal. App. 3d 409 (1983) .................................................................... 15

*ETW Corp. v. Jireh Publ'g, Inc.*
    332 F.3d 915 (6th Cir. 2003) ...................................................................... 9

Gionfriddo v. Majro League Baseball
    94 Cal. App. 4th 400 (2001) ............................................................... 13, 14

*Goldman v. Standard Ins. Co.*
    341 F.3d 1023 (9th Cir. 2003) .................................................................. 20

*Hilton v. Hallmark Cards*

599 F.3d 894 (9th Cir. 2010) .................................................................................. 9, 13

*Hoffman v. Capital Cities/ABC, Inc.*
255 F.3d 1180 (9th Cir. 2001) ............................................................................... 6, 9

*Keller v. Elec. Arts, Inc.*
2010 U.S. Dist. LEXIS 10719 (N.D. Cal. Feb. 8, 2010) ...................................... 15

*Kirby v. Sega of America, Inc.*
144 Cal. App. 4th 47 (2006) ................................................................................ 7, 20

*MGIC Indent. Corp. v. Weisman*
803 F.2d 500 (9th Cir. 1986) ..................................................................................... 5

*Montana v. San Jose Mercury News, Inc.*
34 Cal. App. 4th 790 (1995) .............................................................................. 13, 15

*New Kids on the Block v. News Am. Publ'g, Inc.*
971 F.2d 302 (9th Cir. 1992) ........................................................................... passim

*Parrino v. FHP Inc.*
146 F.3d 699 (9th Cir. 1998) ..................................................................................... 5

*Shively v. Bozanich*
31 Cal. 4th 1230 (2003) ........................................................................................... 12

*White v. Samsung Electronics Am.*
971 F.2d 1395 (9th Cir. 1992) ................................................................................. 17

*Winter v. DC Comics*
30 Cal. 4th 881 (2003) ................................................................................. 1, 5, 7, 9

Statutes

15 U.S.C. § 1072 ..................................................................................................... 13

Cal. Civ. Code §  3344(d) ....................................................................................... 15

Cal. Civ. Code § 3344.1 .......................................................................................... 12

Cal. Civ. Code § 3344.1(f)(1) ................................................................................. 16

Cal. Civ. Code § 3344.1(f)(2) ................................................................................. 16

Cal. Civ. Code § 3344.1(j) ...................................................................................... 15

Sedgwick LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In the instant action, The Estate of Buckminster Fuller ("Plaintiff") asks the Court to confer upon it the power to preclude others from using the name of a scientific molecule for commercial purposes.  Plaintiff, the estate of the deceased Richard Buckminster Fuller, alleges that Maxfield & Oberton Holdings, LLC's ("MOH") popular and functional desk toy products, Buckyballs®, infringe upon Plaintiff's name and likeness, and falsely imply an affiliation and endorsement.   Plaintiff, however, ignores the fact that "buckyballs" are a scientific term of art commonly used to refer to the Carbon 60 molecule "Buckminsterfullerene," which, as the name suggests, was named by scientists as an homage to Buckminster Fuller more than 20 years ago.

Recognizing that publicity rights claims of this nature have the potential to stifle free expression, courts regularly dismiss misappropriation claims that intrude upon this constitutional protection.  Plaintiff's claims here are no different, and can (and should) be dismissed.  Notably, in its filings with the California Secretary of State, Plaintiff does not claim to possess the rights to the name "buckyballs".  This important distinction between the name of the molecule and Plaintiff's rights to the likeness of the individual undermines each cause of action in the complaint.

The use of an individual's likeness is constitutionally protected against right of publicity and unfair competition claims if the use is "transformative." *Winter v. DC Comics,* 30 Cal. 4th 881, 888 (2003).  The relevant inquiry is "whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized," in which case it is protected, "or whether the depiction ... of the celebrity is the very sum and substance of the work in question." *Id.*  The complaint and the accompanying judicially noticeable materials demonstrate that MOH's Buckyball® products are transformative uses of the name given to the "buckyball" molecular compound, which are protected by the First Amendment.

Courts have repeatedly held that factual reporting of matters in the public interest, such as the origins of a scientific molecule, constitute a defense to claims of misappropriation of likeness such as those in the second and third causes of action.  In connection with the sale of its products

here, MOH merely cites the historical fact that Buckminster Fuller is the namesake of the Carbon 60 molecule commonly referred to as "buckyballs." That is a matter of historical fact, protected by both the public interest defense and statutory public affairs exemption. Plaintiff's misappropriation of likeness claims are also independently barred by the applicable statute of limitations, as well as the fact that Plaintiff does not possess rights in the name "buckyballs", as evidenced by Plaintiff's own successor in interest filing with the California Secretary of State.

Any use of, and reference to, Buckminster Fuller in this case constitutes nominative fair use under the Lanham Act, which precludes a finding of liability with respect to Plaintiff's claims of federal unfair competition. Courts use the nominative fair use test in cases where the defendant has used the plaintiff's name to describe the plaintiff's source of fame and historical significance, even if the defendant's ultimate goal was to describe his own product.

For all these reasons, and others explained in more detail below, the Court should dismiss all of the claims asserted against MOH in the complaint, with prejudice.

## II. BACKGROUND

### A. The Scientific History of "Buckyballs"

In the early 1970s, the chemistry of unsaturated carbon configurations was first studied by a group at the University of Sussex, led by Harry Kroto and David Walton. By 1985, Kroto, together with Richard Smalley and Bob Curl at Rice University in Texas, began using laser vaporization techniques of a graphite target in order to produce clusters of atoms. What they found were a variety of Carbon clusters, of which the most common were $C_{60}$ and $C_{70}$. The $C_{60}$ structure in particular resembles a truncated icosahedron, which is a scientific term for a regular polyhedron with 20 identical equilateral triangular faces. The truncated version—to wit, the $C_{60}$—maintains 60 vertices and 32 polyhedron faces comprised of 20 hexagons and 12 pentagons. It has a carbon atom at the vertices of each polygon and a bond along each polygon edge. (Request for Judicial Notice ("RJN") #1-3, Exhs. A-C.)

In laymen's terms, the $C_{60}$ resembles a soccer ball, made of twenty hexagons and twelve pentagons. This shape, coincidentally, is also emblematic of a geodesic dome, similar to that

///

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

made popular by R. Buckminster Fuller. In light of this, the $C_{60}$ was named after Mr. Fuller, and has since been scientifically known as "buckminsterfullerene." (RJN #1-3, Exhs. A-C.)

Since the discovery of buckminsterfullerene, other similar bonded carbon atoms have been discovered in the shapes of cylinders, ellipsoids and tubes, to name a few. Because these were discovered after buckminsterfullerene, they were also classified as part of the "fullerene" family and, together with buckminster-fullerene, are referred to as fullerenes. The suffix "ene" indicates that each C atom is covalently bonded to three others, a situation that classically would correspond to the existence of bonds involving two pairs of electrons ("double bonds"). For their discovery of fullerenes, including buckminsterfullerene, Kroto, Smalley and Curl were awarded the 1996 Nobel Prize in chemistry. (RJN #1-3, Exhs. A-C); (Complaint ("Compl.") ¶ 9.)[1]

Throughout these discoveries, one thing has remained consistent: the original, spherical buckminsterfullerenes are commonly referred to as "buckyballs." (Compl. ¶ 9.)

**B.      The Buckyballs® Desk Toy**

In March 2009, MOH began manufacturing and selling Buckyballs®—an innovative, functional desk toy comprised of rare earth magnets that are pliable and easily manipulated in order to form a variety of shapes. One of the most popular shapes that can be created with the balls is the unique buckminsterfullerne shape. The term "Buckyballs®" is a federally registered trademark of MOH and achieved registration on January 5, 2010. (RJN #5, Exh. E.)

Buckyballs® have since expanded their product line to mimic other common fullerene shapes, such as Buckycubes®, Buckytubes™ and Buckysidekick™, to name a few. Instructions and suggested shape formation are included within MOH's manual, "The Big Book of Bucky." Obviously, carrying scientific relevance to buckminsterfullerene or "buckyballs," Buckyballs® educates its consumers by providing them with the factual and historical origins of the "buckyballs" name. To that end, MOH informs its customers, under the heading "Fun Fact":

> "Buckyballs were named for Buckminster Fuller. Who was he?
> The internet has all the answers but we're happy to share a few.

---

[1] Plaintiff's complaint erroneously includes two paragraphs with the number nine. For purposes of this motion, reference to "¶ 9" is being made to the second of the two similarly numbered paragraphs.

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

He invented the geodesic dome . . . coined the term "Space Ship Earth" . . . and once gave a lecture for 36 straight hours. He was smart. He was crazy. He was fun. Remind you of anything?

(Compl., ¶ 18); (RJN #6); (Declaration of Craig Zucker ("Zucker Decl."), ¶ 2, Exh. 1.)

Similarly, a prior version of the "frequently asked questions" page of the www.getbuckyballs.com website, MOH explained that "the name Buckyballs is a nod to Buckminster 'Bucky' Fuller, a famous architectural-type best known for the geodesic dome (a sphere made of triangles). It's a fun shape to make with Buckyballs . . . ." (Compl. ¶ 19.) Neither Buckminster Fuller's image, photograph, nor words are used in connection with the Buckyballs® products.

**C.    The Estate of R. Buckminster Fuller**

Plaintiff is the Estate of R. Buckminster Fuller who, after Mr. Fuller's passing in 1985, registered with the California Secretary of State its claim to the rights in the following celebrity names: "Buckminster Fuller," "Bucky Fuller," "Bucky," "R. Buckminster Fuller," and "Richard Buckminster Fuller." (Compl. ¶ 10); (RJN #4, Exh. D.) Importantly, Plaintiff has not registered any claim to the rights of the name, "buckyballs." (RJN #4, Exh. D.)

In October 2011, Plaintiff granted a one-time, non-exclusive license to MOH to use Buckminster Fuller's "name, likeness, words and images" in connection with the production of a Buckminster Fuller commemorative edition of Buckyballs®. (Compl. ¶ 12); (RJN #7); (Zucker Decl., ¶ 3, Exh. 2.) The parties limited the use to 1,000 units of MOH's "Buckyball" product, the proceeds of which would benefit The Buckminster Fuller Institute. (Id.) Because it was donating the sales proceeds to the non-profit institute, MOH made a point to credit Plaintiff with all rights associated with the name "Buckminster Fuller." (RJN #7); (Zucker Decl., ¶ 3, Exh. 2.) The license does not, nor does it purport to, convey rights to use the scientific term "buckyballs." (Id.) This marked the one and only time since the inception of Buckyballs® in 2009 that anything more than the generic historical reporting of Buckminster Fuller's name and scientific relevance was used in connection with the Buckyballs® products.

On May 18, 2012, Plaintiff filed the instant matter against MOH, alleging four causes of action: (1) Unfair Competition in Violation of 15 U.S.C. § 1125(a); (2) Invasion of Privacy

1  (Appropriation of Name and Likeness); (3) Unauthorized Use of Name and Likeness in

2  Violation of California Civil Code § 3344.1; and (4) Violation of California Business and

3  Professions Code § 17200 *et seq*.

4  **III.   LEGAL STANDARD**

5  Dismissal is warranted under Rule 12(b)(6) if no relief could be granted under any set of

6  facts that could be proved consistent with the allegations.  *Bell Atlantic Corp. v. Twombly*, 550

7  U.S. 544, 563 (2007).  A plaintiff must do more than merely raise the possibility that some set of

8  facts might support recovery; it must set forth factual allegations that "raise a right to relief

9  above the speculative level." *Id.* at 555.  The Supreme Court recently "affirmed these

10  requirements, explaining the two principles underlying *Twombly*.  "First, the tenet that a court

11  must accept as true all of the allegations contained in a complaint is inapplicable to legal

12  conclusions . . . . Second, only a complaint that states a plausible claim for relief survives a

13  motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

14  When ruling on a motion to dismiss, a court may consider not only the plaintiff's

15  allegations, but also material subject to judicial notice.  *MGIC Indent. Corp. v. Weisman*, 803

16  F.2d 500, 504 (9th Cir. 1986). A court may consider "document[s] the authenticity of which [are]

17  not contested, and upon which plaintiff's complaint necessarily relies[,]" even if those materials

18  are not attached to the complaint.  *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998),

19  superseded by statute on other grounds, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676,

20  681 (9th Cir. 2006); *see also Barnett v. Evans*, 2009 WL 799402, at *4 (N.D. Cal. Mar. 24,

21  2009).

22  Plaintiff's claims are appropriate for resolution at the pleading stage.  "[B]ecause

23  unnecessarily protracted litigation would have a chilling effect upon the exercise of First

24  Amendment rights, speedy resolution of cases involving free speech is desirable." *Winter*, 30

25  Cal. 4th at 891.  To that end, the California Supreme Court noted that misappropriation and

26  related claims "can often [be] resolve[d] . . . as a matter of law simply by reviewing the

27  [defendant's] work in question...." *Id.*  Critically, the Court instructed that such claims should be

28  / / /

**MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT**

Sedgwick LLP

decided at the pleading stage where the works are properly before the court, which is precisely the case here.

**IV. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE PLAINTIFF DOES NOT POSSESS ANY RIGHTS TO THE NAME "BUCKYBALLS"**

The entire complaint is premised on the erroneous assumption that Plaintiff possesses rights in the name "Buckyballs". Once this fallacy is exposed, each of Plaintiff's claims falls apart. At its heart, this is a right of publicity case in which the Estate of Buckminster Fuller asserts that it has the right to preclude MOH from naming its product "Buckyballs". However, as discussed in more detail below, Plaintiff's registration with the California Secretary of State establishes that Plaintiff does not, nor can it, claim rights to the name "Buckyballs". (RJN #4, Exh. D.) This documented admission by Plaintiff is enough to put an end to this litigation.

The simple reality is that Buckminster Fuller is a historical figure, whereas "Buckyballs" is the nickname for a Carbon molecule. While the name given to the Carbon 60 molecule may be a tribute to Buckminster Fuller, the molecule and the man are not one-in-the-same. Plaintiff cannot escape this critical distinction, which pervades most of the legal arguments underlying this motion and forms the basis for the dismissal of each and every cause of action in the complaint.

**V. THE FIRST AMENDMENT BARS ALL OF PLAINTIFF'S CLAIMS BECAUSE ANY USE OF PLAINTIFF'S NAME OR LIKENESS IS A PROTECTED TRANSFORMATIVE USE**

Plaintiff fails to state a claim for Lanham Act Unfair Competition under 15 U.S.C. § 1125(a), Invasion of Privacy, Unauthorized Use of Name and Likeness in Violation of Cal. Civ. Code § 3344.1, and Unfair Business Practices per Cal. Bus. & Prof. Code § 17200 because MOH's Buckyball® products are transformative uses of a name given to the "buckyball" molecular compound, which are protected by the First Amendment and California Constitution. *See, e.g., Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1183 (9th Cir. 2001) (claims for violation of the Lanham Act, common law appropriation action, violation of § 3344, and violation of Bus. & Prof. Code, § 17200 each barred by First Amendment defense).

/ / /

Sedgwick LLP

1    The First Amendment presents an absolute bar to a publicity rights claim if the

2    defendant's work that uses the name or likeness is transformative.  *Comedy III Prods., Inc. v.*

3    *Gary Saderup, Inc.*, 25 Cal. 4th 387, 405 (2001).  "[W]hen a work contains significant

4    transformative elements," the use is protected under the First Amendment.  *Id.*  Such a

5    transformative work is "not only especially worthy of First Amendment protection, but it is also

6    less likely to interfere with the economic interest protected by the right of publicity."  *Id.*

7    The transformative use test is straightforward: it "simply requires the court to examine

8    and compare the allegedly expressive work with the images of the plaintiff to discern if the

9    defendant's work contributes significantly distinctive and expressive content[.]"  *Kirby v. Sega of*

10   *America, Inc.*, 144 Cal. App. 4th 47, 61 (2006).  "If distinctions exist, the First Amendment bars

11   claims based on appropriation of the plaintiff's identity or likeness; if not, the claims are not

12   barred."  *Id.*, citing *Winter v. DC Comics*, 30 Cal. 4th 881, 889-91 (2003).  Thus, in applying the

13   transformative use test, the court "simply" must "discern if the defendant's work contributes

14   significantly distinctive and expressive content; i.e., is 'transformative.'"  *Id.*

15   Whether a particular work is transformative is determined by "whether the celebrity

16   likeness is one of the 'raw materials' from which an original work is synthesized, or whether the

17   depiction or imitation of the celebrity is the very sum and substance of the work in question."

18   *Comedy III*, 25 Cal. 4th at 406.  In that regard, the *Comedy III* court recognized that "the

19   transformative elements or creative contributions that require First Amendment protection . . .

20   can take many forms, from factual reporting to fictionalized portrayal, from heavy-handed

21   lampooning to subtle social criticism."  *Id.* at 406 (internal citations omitted).

22   To assist the analysis, the court posed the following question to determine whether the

23   work at issue was transformative, and thus fair use:  "[D]oes the marketability and economic

24   value of the challenged work derive primarily from the fame of the celebrity depicted?"  *Id.* at

25   407.  The court noted, "[w]hen the value of the work comes principally from some source other

26   than the fame of the celebrity -- from the creativity, skill, and reputation of the artist -- it may be

27   presumed that sufficient transformative elements are present to warrant First Amendment

28   protection."  *Id.*; *see also Winter*, 30 Cal. 4th at 889 (where "the marketability and economic

Sedgwick LLP

value of the challenged work do not derive primarily from the celebrity's fame, there is generally no actionable right of publicity."). It goes without saying that the average consumer who buys MOH's desk toy product does not base his or her purchasing decision on the fact that he or she recognizes the scientific import of the name "Buckyballs", let alone perceives a connection between the desk toy and the systems theorist and engineer, Buckminster Fuller.

As described below, the Buckyballs® products are a transformative, and therefore "fair", use of the buckyball Carbon 60 Molecule.

### A. Mr. Fuller's Likeness is Not the "Sum and Substance" of the Buckyballs® Products

As a practical matter, "buckyballs" is not a use of Buckminster Fuller's name at all. To the contrary, it is a scientific term of art used to refer to the Carbon 60 molecule "Buckminsterfullerene," which was neither invented by Buckminster Fuller himself, nor named by him. Instead, the Carbon 60 molecule was given its name as homage to Buckminster Fuller by the Nobel Prize winning scientists who discovered it. Because the molecule resembles the geodesic shape similar to that previously popularized by Buckminster Fuller, the name "Buckminsterfullerne" was appropriate. (RJN #1-3; Exhs. A-C.) Over time, Buckminsterfullerenes have been commonly referred to as "buckyballs" within the scientific community. (RJN #1-3, Exhs. A-C); (Compl. ¶ 9.)

In this context, Plaintiff cannot plausibly suggest that the "very sum and substance" of the Buckyballs® product is Mr. Fuller's likeness. *See Comedy III*, 25 Cal. 4th at 406. "Buckyballs" is synonymous with the molecular compound "buckminsterfullerene," not with Mr. Fuller's name or likeness. Indeed, there is no practical difference here than if Plaintiff brought a misappropriation claim against MOH for using the term "buckminsterfullerene." Clearly, Plaintiff has no right to restrict anybody from using -- for commercial purposes or otherwise -- a scientific term in the public domain simply because that term happens to be named after him. That the compound is commonly referred to as "buckyballs" within the same scientific community is a distinction without any meaningful difference. In the "Big Book of Bucky,"

/ / /

MOH plainly informs its customers that "buckyballs" is the name of a molecular compound that was named after Buckminster Fuller, by stating under the heading, "*Fun Fact*,"

> Buckyballs were named for Buckminster Fuller. Who was he? The internet has all the answers but we're happy to share a few. He invented the geodesic dome . . . coined the term "Space Ship Earth" . . . and once gave a lecture for 36 straight hours. He was smart. He was crazy. He was fun. Remind you of anything?

(Compl., ¶ 18); (RJN #6); (Zucker Decl., ¶ 2, Exh. 1.)

There is no allegation in Plaintiff's complaint, for example, that Mr. Fuller himself was commonly referred to as "buckyballs," or that "buckyballs" is widely associated with his likeness as opposed to a mere description and colloquial term of science. This reality, which dooms Plaintiff's complaint, is further evidenced by the fact that in its registry with the California Secretary of State, Plaintiff does not claim the rights to the term "Buckyballs." (RJN #4, Exh. D.) The products at issue, moreover, are not referred to as "*Bucky's* Balls," or by some other moniker with suggestive undertones that could arguably lessen the scientific relevance of the term.

The issue here is therefore significantly more acute than in almost every other transformative use case decided to date. MOH uses the term "buckyballs" in connection with a *molecular compound* that is -- as a matter of historical fact -- named after a celebrity. The reference to "Buckyballs" is therefore a significant step removed from the celebrity himself. On the other hand, most, if not all, relevant transformative use cases involved a dispute over a direct tie to the celebrity, usually involving the use of the individual's *image* that was subsequently transformed (or not) into other creative and protected expressions. *See, e.g.*, *Hoffman*, 255 F.3d at 1184-85 (likely transformative use where artist altered Dustin Hoffman's *Tootsie* picture and replaced the body with different clothes); *Winter*, 30 Cal. 4th at 890 (distorting images of two famous singers to look like half-worm half-humans in a comic book); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 938 (6th Cir. 2003) (transformative use where Tiger Woods was creatively represented within the context of the history of golf); *cf. Comedy III*, 25 Cal.4th at 408 (literal depiction of the Three Stooges on a t-shirt, with nothing more, was found to be a misappropriation); *Hilton v. Hallmark Cards*, 599 F.3d 894, 911 (9th Cir. 2010) (not

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

transformative where a greeting card depicting Paris Hilton simply recreated an actual scene from the plaintiff's television show without a new context).

In none of these cases is there an alleged misappropriation of a widely-accepted *namesake*. And for good reason. If Plaintiff were successful here, then the Buckminster Fuller Estate could preclude anyone from using the name of the scientific molecule for commercial purposes without the consent of the person for whom the molecule was named. Under such an absurd theory, the descendants of Charles Richter would be able to bar commercial uses that reference the Richter scale and the estate of Ernest Mach could prevent commercial products that refer to Mach speed. Such an extreme result is exactly what is condemned by the First Amendment and its associated transformative use test.

## B. Buckyballs® Are Presumptively Transformative Because Their Marketability and Value Are Derived From Their Functionality as a Toy, Not From Plaintiff's Name

As *Comedy III* instructs, "[w]hen the value of the work comes principally from some source other than the fame of the celebrity -- from the creativity, skill, and reputation of the artist -- it may be presumed that sufficient transformative elements are present to warrant First Amendment protection." *Comedy III*, 25 Cal.4th at 407. Here, it is simply not plausible that the marketability and value of the Buckyballs® products are derived from Plaintiff's name. Buckyballs® are a functional expression of the Carbon 60 molecule. The marketability and value of the product are directly tied to the functional magnetic aspect of the balls that creates the potential to create a variety of fun, entertaining shapes, chief among which is the geodesic dome that mirrors the structure of the Carbon 60 molecule called the Buckminster Fullerene. In other words, it is evident that the value of the Buckyballs® desk toy is a product of the toy's design, not its name.

Plaintiff's license of the Buckminster Fuller name and likeness for limited edition commemorative Buckyballs® further illustrates this point. In October 2011, Plaintiff granted MOH "one-time non-exclusive permission to use Buckminster Fuller's name, likeness, words and images on the packaging of their limited edition of approximately 1000 units of their 'Buckyball' product, and on their brochure related to the product" and MOH would donate the

profits to the Buckminster Fuller Institute. (RJN #7); Zucker Decl., ¶ 3, Exh. 2); (Compl. ¶ 12.) To that end, the packaging for the "Commemorative Buckminster Fuller Edition Buckyballs" contained an actual image of Buckminster Fuller, a reference to his actual name, and even a quote attributed to the man. (RJN #8); (Zucker Decl., ¶ 4, Exh. 3.) Along with the license, MOH was required to use (and did use) the following commemorative edition credits:

> "Buckminster Fuller's name, likeness and words used with permission of The Estate of R. Buckminster Fuller."

> "Buckminster Fuller's name, likeness, words, images and the trademark "Dymaxion" used by permission of The Estate of R. Buckminster fuller."

> (RJN #7); (Zucker Decl., ¶ 3, Exh. 2.)

By the time this license was granted, Buckyballs® had been used in commerce for more than a year and a half. (RJN #5, Exh. E.) At no time prior to this one-time license, did MOH seek, nor was it granted, permission to make such a commemorative edition product, despite (as noted *infra*.) Plaintiff's knowledge of MOH's "Buckyball product" since 2009. (RJN #5, Exh. E.) The fact that MOH agreed to make an entirely new, and very *limited*, edition to its product in order to generate proceeds for the Buckminster Fuller Institute indicates that the non-commemorative Buckyballs® products are entirely separate and distinct from the value allegedly associated with Mr. Fuller's name and likeness.

C.    **Plaintiff's Claims, if Successful, Would Result in Unjust and Unanticipated Consequences**

The fact that scientists named a molecule after an individual should not preclude others from referring to "buckyballs" as a product that is premised on the unique qualities of the molecule itself, and not on the person for whom the molecule is named. Plaintiff simply has no right to preclude anyone from using the name of a scientific molecule for commercial purposes. Such an extreme result is exactly what is condemned by the First Amendment and associated transformative use test, as it would effectively permit Plaintiff to police the public domain.

/ / /

/ / /

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

## VI. PLAINTIFF'S STATUTORY AND COMMON LAW MISAPPROPRIATION CLAIMS ARE INDEPENDENTLY DEFICIENT

In addition to being barred by the First Amendment, Plaintiff's second and third causes of action for common law and statutory misappropriation of likeness should be dismissed for several reasons. The second cause of action for common law misappropriation of likeness (invasion of privacy) is barred by the two year statute of limitations and the public interest defense. The third cause of action for statutory misappropriation of likeness (Civil Code § 3344.1) is also barred by the statute of limitations, as well as the public affairs exemption and Plaintiff's lack of rights in the name "buckyballs". Upon the dismissal of the predicate misappropriation of likeness claims, the first cause of action (Lanham Act Unfair Competition) and fourth cause of action (California Unfair Competition) likewise fail as they are based upon, and derivative of, the misappropriation of likeness claims.

### A. Plaintiff's Statutory and Common Law Misappropriation Claims are Barred by the Statute of Limitations

California's common law and statutory publicity rights are governed by a two-year statute of limitations. *Christoff v. Nestle USA, Inc.*, 47 Cal. 4th 468, 476 n.7 (2009) (applying two-year statute of limitations under Cal. Civ. Pro. Code § 339 to California publicity right claim); *Alberghetti v. Corbis Corp.*, 713 F. Supp. 2d 971, 976 (C.D. Cal. 2010). The statute of limitations begins to run from the initial publication of the allegedly infringing work to the general public, "regardless of when the plaintiff . . . became aware of the publication." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1245-46 (2003).

To the extent Plaintiff's claims here are premised upon sales and promotion of products bearing the Buckyballs® trademark, those claims are time-barred. Buckyballs® were first used in commerce on March 1, 2009, and as of January 5, 2010 have been the subject of a federally-registered trademark, registration number 3733723. (RJN #5, Exh. E.) Plaintiff did not file the instant matter until May 18, 2012, more than two years after Buckyballs® were first distributed to the general public. As a result, its misappropriation claims with respect to this product are time barred. *See also New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 305 (9th

1  Cir. 1992) (recognizing that filing a trademark application is more than merely a ministerial act

2  connected with a business transaction; it is an attempt to establish a property right under a

3  comprehensive federal statutory scheme); 15 U.S.C. § 1072 (registering a trademark provides

4  "constructive notice of the registrant's claim of ownership thereof.").

**B.  Plaintiff's Statutory and Common Law Misappropriation Claims Are Barred by the Public Interest Defense**

7  Plaintiff takes issue with MOH's historical references to Buckminster Fuller and his

8  accomplishments.  The complaint points to statements and descriptions of Buckminster Fuller in

9  a recent MOH press release, (Compl. ¶ 13), the "Big Book of Bucky," (Compl. ¶ 18); (RJN #6);

10  (Zucker Decl., ¶ 2, Exh. 1), and a former "Frequently Asked Question" on MOH's website, in an

11  effort to establish that MOH has misappropriated Plaintiff's name and likeness to generate

12  commercial interest in Buckyballs®.  Plaintiff argues that such historical references imply that

13  "Plaintiff acquiesced to the inclusion of his name in BuckyBalls and that Plaintiff was

14  compensated by Defendant for granting such permission."  (Compl. ¶¶ 39, 47-49.)  Inclusion of

15  historical references to Buckminster Fuller, however, is a matter of public interest and cannot, as

16  a matter of law, support a misappropriation of likeness claim in California.

17  "Under California law, 'no cause of action will lie for the publication of matters in the

18  public interest, which rests on the right of the public to know and the freedom of the press to tell

19  it.'"  *Hilton*, 580 F.3d at 892 (quoting *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th

20  790, 793 (1995)).  "'Public interest attaches to people who by their accomplishments or mode of

21  living create a bona fide attention to their activities.'"  *Hilton*, 580 F.3d at 892 (quoting *Dora v.

22  Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993)).  In *Gionfriddo v. Major League

23  Baseball*, for example, the court held that the defendants were entitled to the public interest

24  defense.  94 Cal. App. 4th 400, 415 (2001).  There, the plaintiffs, four former baseball players,

25  claimed that the defendants' use of their names and statistics violated their rights of publicity.

26  *Id.* at 405-07.  Their information appeared on a website, which reported historical team rosters

27  and listed names of players who won awards during each season.  *Id.* at 406.  The defendants

28  also included still photographs of the plaintiffs from their playing days in video documentaries.

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

Sedgwick LLP

*Id.* The court characterized these uses as "simply making historical facts available to the public

2 through game programs, Web sites and video clips." *Id.* at 411. Because the public had an

3 interest in the plaintiffs' athletic performance, the First Amendment protected the "recitation and

4 discussion of [their] factual data." *Id.*

5   Similarly, in *C.B.C. Distribution and Marketing v. Major League Baseball Advanced*

6 *Media*, the plaintiff sold "fantasy baseball products" that included the names and statistics of

7 major league baseball players. 505 F.3d 818, 820-21 (8th Cir. 2007). Through these products,

8 consumers could form fantasy baseball teams and compete with other users. *Id.* at 820. "A

9 participant's success . . . depend[ed] on the actual performance of the fantasy team's players on

10 their respective actual teams during the course of the major league baseball season." *Id.* at 820-

11 21. The defendant counterclaimed, arguing that these products violated players' rights of

12 publicity. The court disagreed. It analogized the case to *Gionfriddo*, and held that the use of the

13 players' information in the fantasy game was a "'recitation and discussion'" of the players'

14 information. *Id.* at 823-24 (quoting *Gionfriddo*, 94 Cal. App. 4th at 411).

15   Much like *Gionfriddo* and *C.B.C. Distribution*, MOH states that Buckminster Fuller is the

16 namesake of the Carbon 60 molecule commonly referred to as "buckyballs." MOH notes that

17 "[Buckminster Fuller] invented the geodesic dome (a sphere made of triangles . . ., coined the

18 term 'Space Ship Earth' (referring to the fact that we're all in this together, hurling through space

19 in a group), and once gave a lecture for 36 straight hours. He was smart. He was crazy. He was

20 fun." (Compl. ¶ 18); (RJN #6); (Zucker Decl., ¶ 2, Exh. 1.) MOH's former answer to the

21 "Frequently Asked Question" "Where does the name Buckyballs come from?" similarly provides

22 more of the same factual and historical data. In short, MOH tells the consuming public the

23 historical fact that buckyballs are a "nod to Buckminster 'Bucky' Fuller, a famous architectural-

24 type," (Compl. ¶ 19), and notes that "[t]he Carbon 60, one of the strongest atomic structures

25 known to man, are sometimes called Fullerenes." (Id.) MOH is simply making available to the

26 consuming public matters of historical fact and importance. MOH limits its few isolated

27 references to Buckminster Fuller and his accomplishments to these facts, and does not use, for

28 example, any image of Buckminster Fuller himself or any quotes about buckyballs that would

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

Sedgwick LLP

otherwise suggest to consumers that Mr. Fuller endorses the Buckyballs® products.  Because the public has an interest in this information, such descriptions, references and factual reporting are protected.

C.  **Plaintiff's Statutory Misappropriation Claim Is Barred by the Statute's "Public Affairs" Exemption**

Plaintiff's § 3344.1 misappropriation of likeness claim is barred by the "public affairs" exemption set forth in Cal. Civ. Code § 3344.1(j).

California Civil Code section 3344.1(j), like its 3344(d) counterpart, provides a public affairs exemption to the statutory right of publicity.  It exempts from liability under section 3344.1 "a use of a name . . . or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign."  Cal. Civ. Code § 3344.1(j); 3344(d).  This exemption is not coextensive with the public interest defense; it "is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest."  *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) (citing *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421 (1983)).

In addressing the similar section 3344 public affairs exemption, the California Court of Appeals noted that "'public affairs' was intended to mean something less important than news." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th at 545.  The subject matter encompassed by public affairs, the Court noted, is not limited "to topics that might be covered on public television or public radio."  *Id.* at 546.  In that regard, courts have construed the statutory public affairs exemption to require the same type of activity as the public interest defense discussed above, namely factual and historical reporting.  *See, e.g., Montana*, 34 Cal. App. 4th at 793 ("the statutory cause of action specifically exempts from liability the use of a name or likeness in connection with the reporting of a matter in the public interest."); *Keller v. Elec. Arts, Inc.*, 2010 U.S. Dist. LEXIS 10719, at *24-25 (N.D. Cal. Feb. 8, 2010).  Accordingly, for the same reasons noted above, MOH's descriptive uses and reporting of Buckminster Fuller's name, accomplishments and scientific relevance are public affairs exempted from statutory liability.

LA/1400735v1

**D.**     **Plaintiff's Statutory Misappropriation Claim Is Deficient Because Plaintiff is Not the Successor in Interest to the Rights of "Buckyballs"**

Plaintiff fails to state a cause of action for statutory misappropriation of name and likeness because it is not the registered successor in interest to the rights of "buckyballs." Section 3344.1(f)(1) provides, in pertinent part, "[a] successor in interest to the rights of a deceased personality under this section . . . shall not recover damages for a use prohibited by this section that occurs before the successor in interest . . . registers a claim of the rights under paragraph (2)." Cal. Civ. Code § 3344.1(f)(1). Under paragraph two, registration with the Secretary of State as a successor in interest is an acceptable means of accomplishing the preceding paragraph's mandates. *Id.* at § 3344.1(f)(2).

Plaintiff alleges that in "1985, [it] registered its claims as the successor in interest to the rights of Buckminster Fuller pursuant to [§ 3344.1(f)]. The registration specified several versions of Dr. Fuller's celebrity name including 'Bucky Fuller.'" (Compl. ¶ 10.) A review of the Secretary of State Successor in Interest registration, however, reveals that Plaintiff has registered claims in the celebrity names, "Buckminster Fuller," "Bucky Fuller," "Bucky," "R. Buckminster Fuller," and "Richard Buckminster Fuller" only. (RJN #4, Exh. D.) Notably absent is any claim or right to the celebrity name, "Buckyballs." (Id.) For the reasons noted above, nor could there be, as "buckyballs" is synonymous with the molecular compound "buckminsterfullerene," not with Mr. Fuller's likeness. As Plaintiff has not (and cannot) registered any claim or right in the term "buckyballs," it cannot recover damages for any proven violation of § 3344.1. *See* Cal. Civ. Code § 3344.1(f)(1).

**VII.**     **PLAINTIFF'S LANHAM ACT UNFAIR COMPETITION CLAIM IS INDEPENDENTLY DEFICIENT UNDER THE NINTH CIRCUIT'S NOMINATIVE FAIR USE TEST**

Plaintiff's first cause of action alleges MOH is liable for federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), because the use of Buckminster Fuller's name, achievements and scientific relevance in MOH's printed materials and website falsely implies that Plaintiff endorses or approves the Buckyballs® products. (Compl. ¶ 31.) This argument

/ / /

Sedgwick LLP

fails because the reference to Buckminster Fuller constitutes nominative fair use under the Lanham Act.

Courts use the nominative fair use test in cases where the defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal was to describe his own product. *New Kids,* 971 F.2d at 308. To establish a nominative fair use defense, a defendant must prove the following three elements: "First, the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308. In cases where a plaintiff's name and likeness are at issue, the plaintiff's "mark" is plaintiff's name and likeness, and the product is the plaintiff himself, including the reasons and source for his fame. *Cairns, et al. v. Franklin Mint Co., et al.*, 292 F.3d 1139, 1152 (9th Cir. 2002); *White v. Samsung Electronics Am.*, 971 F.2d 1395, 1400 (9th Cir. 1992) (the "goods" in celebrity endorsement cases are "the reasons for or source of the plaintiff's fame"); *Clark v. America Online, Inc.*, 2000 U.S. Dist. LEXIS 17368, at *14-15 n.2 (C.D. Cal. Nov. 30, 2000).

In this case, Plaintiff's allegations establish that MOH uses, in limited scenarios, Buckminster Fuller's name in order to describe his historical achievements and significance. As this constitutes a nominative fair use, Plaintiff's unfair competition claim should be dismissed.

### A. "Buckyballs" and "Buckminster Fuller" are Not Readily Identifiable

The first element of the nominative fair use test is that "the Plaintiff's product … must be one not readily identifiable without use of the trademark." In other words the use of Buckminster Fuller's name and associated historical facts, including the term "buckyball," must not be readily identifiable without referencing the name itself. To note an often cited example, "one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls." *New Kids*, 971 F.2d at 306. Similarly, one might refer to "the English princess who died in a car crash in 1997, "but it is far simpler (and more likely to be understood) to refer to "Princess

Diana." *Cairns*, 292 F.3d at 1153. For those reasons, the court in *Cairns*, for example, found that the first factor of the nominative fair use test was satisfied when the Franklin Mint used the "Diana" name in conjunction with its Princess Diana-related products. *Id.*

Such is the case here. One might refer to the "famous architectural-type best known for the geodesic dome shape," or "a molecular compound comprised entirely of carbon, in the form of a hollow sphere, ellipsoid or tube," but is far simpler (and more likely to be understood) to refer to "Buckminster Fuller" and "buckyball," respectively.

**B.** **MOH Uses No More of Plaintiff's Name and Likeness Than is Reasonably Necessary**

The second element of the nominative fair use test is that only so much of the mark or marks may be used as is reasonably necessary to identify the Plaintiff's product or service. *New Kids*, 971 F.2d at 308. In finding this element met, the *Cairns* court noted:

> [I[t is doubtful whether Franklin Mint would be able to sell its "Diana, Princess of Wales Porcelain Portrait Doll" without prominent reference to Princess Diana. Not every Franklin Mint customer can be expected to recognize Princess Diana's features on the doll. And even fewer Franklin Mint customers can be expected to recognize Princess Diana's royal tiara and bolero jacket on the doll. Accordingly, a caption reading "Diana" is "reasonably necessary" to identify Princess Diana. Similarly, a photograph showing Princess Diana wearing her royal tiara and bolero jacket is "reasonably necessary" to identify these accessories of Princess Diana. In a nutshell, Franklin Mint had to ensure that its customers understood the references to Princess Diana, and it did what was "reasonably necessary" for this purpose."

*Cairns*, 292 F.3d at 1154.

Here, in a couple isolated instances, MOH used Buckminster Fuller's name and historical information only to explain how the term "buckyball" was scientifically derived, and educated the consumer about its historical significance. MOH does not use any image of Mr. Fuller, quotes by Mr. Fuller, or non-historical description of Mr. Fuller. Its limited use of his name is no more than what is reasonably necessary to explain his relevance with respect to the buckyball Carbon 60 molecule. Accordingly, this nominative fair use factor is met. *See, e.g., Clark*, 2000 U.S. Dist. LEXIS 17368, at *17 (noting that under the second nominative fair use factor, use of

"Dick Clark's" name standing alone, without the use of any photograph or image, was reasonably necessary to identify the celebrity himself).

### C. MOH Does Nothing to Suggest Sponsorship or Endorsement

The final nominative fair use factor is that that the user of plaintiff's name must do nothing that would, in conjunction with the name, suggest sponsorship or endorsement by the celebrity. *New Kids*, 971 F.2d at 308. While this factor often tends to be the closest call among the three, the allegations in the complaint show that this factor, like the others, is satisfied.

In *Clark*, for example, the court found that the reference to "Dick Clark" on mailed advertisements sent to prospective AARP customers did not imply that Mr. Clark endorsed or sponsored the advertisements purpose, as the mailer was merely referring to Mr. Clark (and others) as "generational icons from the 1950s and 1960s." *Clark*, 2000 U.S. Dist. LEXIS 17368, at *18. The court noted that the reference to his name alone sets forth no suggestion that Mr. Clark has anything to do with the service that defendant was offering through the mailer that referred to Mr. Clark (and others). *Id.* In fact, the court even dismissed the notion that the black and white photograph of an "American Bandstand"[2]-like scene served to reinforce the impression that the "Dick Clark" name is used as an endorsement. *Id.* at *17-18. The court reasoned, "even if the photograph were found to be taken from "American Bandstand" archives itself, . . . [i]t is merely another symbol of the historical period the Mailer was designed to evoke." *Id.*

Here, the use of Buckminster Fuller's name and historical achievements is but a "nod" to the architectural icon. (Compl. ¶ 19.) His name and historical achievements only are referenced, and no picture or image depicting his likeness -- literally or, as in *Clark*, similarly -- is used. Just as in *Clark*, Mr. Fuller is a generational and historical symbol in many fields; use of his name as a historical reference point is symbolic only of the shape and nature of the Carbon 60 molecule. It is not suggestive of an endorsement.

/ / /

---

[2] "American Bandstand" being one of several television shows popularized by Dick Clark.

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

1   The one-time limited edition commemorative license in this case is also instructive.  As

2   noted, in October 2011, Plaintiff granted MOH a non-exclusive license to sell 1,000 units of

3   limited edition Buckminster Fuller Buckyballs®.  (RJN #7); (Zucker Decl., ¶ 3, Exh. 2.)  The

4   packaging and brochure of these limited edition Buckyballs® required that MOH expressly note

5   its permission to use the Buckminster Fuller name, words and images in connection with these

6   commemorative edition products only, and that all proceeds will go to the Buckminster Fuller

7   Institute.  (Compl. ¶ 12); (RJN #7-8); (Zucker Decl., ¶¶ 3-4, Exhs. 2-3.)  The license requires no

8   such restrictions on the use of the term "buckyball."  (Id.)  This marked the one and only time

9   since the inception of Buckyballs® in 2009 that anything more than the generic historical

10  reporting of Buckminster Fuller's name and scientific relevance was used in connection with the

11  Buckyballs® products, and serves only to undermine Plaintiff's position.  Accordingly, this

12  nominative fair use factor is also satisfied, and Plaintiff's Lanham Act Unfair Competition claim

13  should be dismissed with prejudice.

14  **VIII.   PLAINTIFF'S CALIFORNIA UNFAIR COMPETITION § 17200 CLAIM FAILS
         BECAUSE IT LACKS A PREDICATE VIOLATION**

15

16        Plaintiff lacks an underlying wrong on which his unfair business practices claim may

17  stand.  Section 17200 "borrows violations of other laws and treats them as unlawful practices

18  that the unfair competition law makes independently actionable."  *Goldman v. Standard Ins. Co.*,

19  341 F.3d 1023, 1036 (9th Cir. 2003) (internal quotations and citations omitted).  In this manner,

20  an unfair competition claim "ride[s] the coattails" of the plaintiff's primary claims.  *Kirby*, 144

21  Cal. App. 4th at 57 n.3; *see also*, *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994)

22  (noting that actions pursuant to § 17200 are "substantially congruent" to claims made under the

23  Lanham Act).  Because Plaintiff's unfair business practices claim is derivative of his

24  misappropriation and federal unfair competition claims against MOH, it fails for the same

25  reasons they do and should be dismissed.

26  / / /

27  / / /

28  / / /

MAXFIELD & OBERTON HOLDING'S NOTICE AND MOTION TO DISMISS COMPLAINT

## IX.  <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should dismiss Plaintiff's complaint against MOH in its entirety, with prejudice.

Dated:  July 13, 2012             SEDGWICK LLP


By:  <u>/s/ *Matthew Fischer*</u>
         James J.S. Holmes
         Matthew Fischer
         Jia-Ming Shang
         Jason Joyal
         Attorneys for Defendant MAXFIELD &
         OBERTON HOLDINGS, LLC