United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

THE ESTATE OF BUCKMINSTER FULLER, Plaintiff, v. MAXFIELD & OBERTON HOLDINGS, LLC, Defendant.

Case No.: 5:12-CV-02570-LHK

ORDER DENYING MOTION TO DISMISS

Plaintiff the Estate of Buckminster Fuller ("Plaintiff") filed this lawsuit on May 18, 2012, alleging four causes of action. ECF No. 1 ("Compl."). Defendant Maxfield & Oberton Holdings, LLC ("Defendant") moves to dismiss all causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 12 ("Mot."). Plaintiff has filed an opposition to the motion, ECF No. 19 ("Opp'n"), and Defendant has filed a reply, ECF No. 21 ("Reply"). The Court held a hearing on the motion on November 1, 2012. Having considered the parties' submissions and oral arguments, the Court DENIES Defendant's motion.

**I. Background**

Unless otherwise noted, the following allegations are taken from the complaint and judicially noticeable documents and are presumed to be true for purposes of ruling on Defendant's motion to dismiss. *See Marder v. Lopez*, 450 F.3d 445, 447 n.1 (9th Cir. 2006).

Richard Buckminster Fuller was a renowned 20th century inventor who "held 28 patents, authored 28 books, [and] received 47 honorary degrees" in the course of his life before passing away in 1983. Compl. at ¶ 1. Mr. Fuller was best known for developing the geodesic dome, an architectural design. *Id.* In 1985, scientists discovered the Carbon-60 molecule and, because its shape resembled that of a geodesic dome, named the molecule Buckminsterfullerene. *Id.* at ¶ 9. The buckminsterfullerene molecule is commonly referred to as a buckyball. *Id.* In 1985, Plaintiff registered its claim as the successor in interest to the rights of Buckminster Fuller pursuant to Cal. Civ. Code § 3344.1(f), and also specified several variations of Mr. Fuller's name, including "Bucky Fuller." *Id.* at ¶ 10.

Defendant manufactures and sells popular desk toys called Buckyballs. *Id.* at ¶ 1. According to a press release by Defendant, Buckyballs were "inspired and named after famous architectural engineer and inventor, R. Buckminster Fuller[.] Buckyballs and Buckycubes are the world's most popular adult desktoy and have been compared to famous desktoys of yore such as Newton's Cradle, the Zen Garden, and Pin Art." *Id.* at ¶ 13 (internal quotations omitted). Buckyballs are round rare earth magnets that can be combined to form various shapes, including one that resembles the Carbon-60 buckyball molecule. *Id.* at ¶ 15. Defendant also manufactures and distributes several other items under the Buckyballs or related trademarks including Buckycubes, Bucky sidekick, Buckybars, BuckyBricks, BuckyBlocks, BuckyBalls (a vitamin supplement), and The Big Book of Bucky (a book that provides instructions on how to make various shapes with Buckyballs). *Id.* at ¶¶ 14-18, 20. The Big Book of Bucky contains a portion that states "Buckyballs were named for Buckminster Fuller," then describes a few of Mr. Fuller's accomplishments, and concludes by stating "[h]e was smart. He was crazy. He was fun. Remind you of anything?" *Id.* at ¶ 18 (internal quotations omitted). Defendant's website also at one point contained a Frequently Asked Questions page that stated "[t]he name Buckyballs is a nod to Buckminster 'Bucky' Fuller, a famous architectural-type best known for the geodesic dome (a sphere made of triangles). It's a fun shape to make with Buckyballs. FUN FACT: The Carbon-60, one of the strongest atomic structures known to man, are sometimes called Fullerenes. They too

United States District Court
For the Northern District of California

were named after Fuller for their similarity to geodesic domes." *Id.* at ¶ 19 (internal quotations omitted).

In 2011, Plaintiff licensed to Defendant limited rights to use Mr. Fuller's name and likeness in connection with a limited commemorative edition of Buckyballs. *Id.* at ¶ 12. On May 18, 2012, Plaintiff brought the present action alleging that Defendant misappropriated Mr. Fuller's name and likeness through the manufacture, distribution, and sale of Buckyballs and related products. *Id.* at ¶¶ 22-23. Plaintiff also claims that Defendant's actions are "likely to cause confusion among the general public about Plaintiff's endorsement of Defendant's products." *Id.* at ¶ 23. Plaintiff asserts four causes of action: (1) violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) invasion of privacy under California common law; (3) invasion of privacy under California Civil Code § 3344.1; and (4) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. Defendant moves to dismiss each claim.

**II. Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While "'detailed factual allegations'" are not required, a complaint must include sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "'formulaic recitation of the elements' of a cause of action." *Iqbal*, 566 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal*, 566 U.S. at 677-78.

**III. Requests for Judicial Notice**

Defendant has submitted two requests for judicial notice. ECF Nos. 13 ("RJN"), 22 ("Supp. RJN"). Under Federal Rule of Evidence 201(b), the Court can take judicial notice of any fact that is "not subject to reasonable dispute in that it is. . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under the doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents attached to the complaint, but also documents whose contents are alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, the complaint relies on several documents not attached thereto: (1) Defendant's "Fun Facts" webpage; (2) the October 24, 2011 licensing agreement between Plaintiff and Defendant; and (3) the packaging from the commemorative edition of Defendant's Buckyballs product. Neither the authenticity nor the relevance of these documents is disputed. Accordingly, the Court properly considers them. Defendant's RJN is GRANTED as to these three documents.

The Court may also take judicial notice of information posted on government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities. . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."). Plaintiff has not objected to the use of these government websites. Accordingly, the Court GRANTS Defendant's request as to Exhibits A, B, D, and E to Defendant's RJN.

Defendant's remaining requests seek judicial notice of publications and websites that are neither incorporated into the complaint nor published by governmental entities. The first is a scientific article republished on the website of the Buckminster Fuller Institute discussing the naming of the Carbon-60 molecule after Mr. Fuller (RJN Exh. C). Plaintiff has not objected to this

United States District Court
For the Northern District of California

article, and the fact that the molecule was named for Mr. Fuller is not reasonably subject to dispute. Further, Plaintiff notes in the complaint that the Buckminster Fuller Institute is "supported by" Plaintiff. Compl. at ¶ 12. Accordingly the Court takes judicial notice of Exhibit C to Defendant's RJN.

Defendant has also sought judicial notice of a webpage entitled "Buckytubes, What is Buckytubes?" Supp. RJN Exh. A. Defendant has provided a web address, but no information about who maintains this website or how information on the website is obtained. As judicial notice is appropriate only for facts whose accuracy cannot reasonably disputed, it is inappropriate for the Court to take judicial notice of facts on a webpage whose source and reliability are unknown. Accordingly, Defendant's request as to Supp. RJN Exh. A is DENIED.

Exhibit B to Defendant's Supp. RJN is an article from *Applied Physics Letters* entitled "Anomalous thermal relaxation in carbon nanoclusters." The article makes no reference to the name "Bucky," to Mr. Fuller, or to any of Defendant's products, and Defendant has not explained how it is relevant to this case. Accordingly, Defendant's request is DENIED as to Supp. RJN Exh. B.

Defendant further requests that the Court take judicial notice of an article from the website Huff Post Science entitled "Do Buckyballs Extend Lifespan?" Supp. RJN Exh. C. Again, Defendant has not explained the relevance of this article. Though the article does refer to Carbon-60 molecules as buckyballs, the Court has already taken judicial notice of sources establishing this fact. It is unclear what this article contains that is relevant, as this lawsuit has nothing to do with the health-related properties of Carbon-60 molecules, and none of the briefing the parties have submitted references this article or its contents. Accordingly, Defendant's request as to Supp. RJN Exh. C is DENIED.

Finally, Defendant has submitted a page from its own website entitled "Books." Supp. RJN Exh. D. It is unclear exactly of what Defendant is seeking judicial notice. The fact that Defendant sells books on its website? The picture of the book cover that appears on Defendant's webpage? The appearance of the website on the date it was accessed (August 3, 2012)? Because the Court takes judicial notice only of adjudicative facts, and Defendant has not indicated, nor can the Court

discern, what adjudicative fact is supposedly being established here, the Court DENIES Defendant's request as to Supp. RJN Exh. D.

**IV. Discussion**

As an initial matter, Defendant suggests that the entire complaint must be dismissed because Defendant's product is named after a carbon molecule, not after the man Buckminster Fuller. This is a question of fact that the Court cannot resolve on a motion to dismiss. Plaintiff has alleged that the name of the toy references the name of the man. *See* Compl. at ¶¶ 34, 37, 47, 54. At this stage of the proceedings, the Court takes the allegations in the Complaint as true. Thus, this general argument that Defendant is referencing only the molecule does not warrant dismissal.

Defendant presents several distinct arguments for dismissal, some of which apply to all of the claims, and some, only to certain claims. Defendant argues that: (1) all four claims are barred by the First Amendment under the doctrine of transformative use; (2) the statutory and common law publicity claims are barred by the statute of limitations, the public interest and public affairs defenses, and the fact that while Plaintiff owns the name "Buckminster Fuller" and some related names he does not own the name "Buckyballs"; (3) the Lanham Act claim is barred under the nominative fair use doctrine; and (4) the § 17200 claim must fail because all the other claims fail, leaving no "predicate violation." The Court will address each in turn.

**A. Transformative Use**

As a defense to all four of its claims,[1] Defendant argues that its use of the name "Bucky" is transformative, and thus protected by the First Amendment. Mot. at 6-11. "Under California law, 'when an artist is faced with a right of publicity challenge to his or her work, he or she may raise as [an] affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the

[1] Defendant has not cited any cases applying this defense to a federal Lanham Act claim like this one. In the only federal case Defendant cites, *Hoffman v. Capital Cities*, 255 F.3d 1180 (9th Cir. 2001), the image at issue was deemed protected by the First Amendment because the speech was not commercial; it did not engage in the type of transformative use analysis Defendant proposes here. However, because, as discussed below, the Court finds the defense inapplicable to this situation for other reasons, it need not decide whether there is such a defense to a Lanham Act claim.

celebrity's fame.'" *Hilton v. Hallmark Cards*, 599 F.3d 894, 909 (9th Cir. 2010) (quoting *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001)).

Typically, in publicity cases, this defense arises where the defendant has created some kind of artistic or creative work that he sells, and a plaintiff who is depicted in that work sues to protect his or her right of publicity. The question is then whether the defendant's work "contributes significantly distinctive and expressive content" so as to be protectable as original expression, *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47, 61 (2006), or whether Defendant is instead profiting primarily from the plaintiff's image or identity rather than from his own artistic contributions. In these cases, the product being sold is the defendant's expressive work itself (which incorporates the plaintiff's image) – not some other product, for which the plaintiff's name or image is used only in the marketing. *See, e.g.*, *Hilton*, 599 F.3d 894 (greeting card depicting celebrity Paris Hilton); *Comedy III*, 25 Cal. 4th 387 (T-shirt depicting the three stooges).

The situation here is markedly different. Defendant's product itself – a set of round magnets – does not depict, reference, or involve Mr. Fuller. Plaintiff's allegation is not that the product itself misappropriates Mr. Fuller's name or likeness, as in *Comedy III* or *Hilton*, but rather that his name and identity are being used to sell an unrelated product. *See* Compl. at ¶ 23. It is thus unclear for what "work" Defendant is claiming First Amendment protection. At the November 1, 2012 hearing, Defendant was unable to articulate exactly what the work deserving of First Amendment protection is. Defendant did, however, confirm that its contention is that by using the name "Bucky" as a name for desk toys, Defendant has transformed it, and should thus be entitled to First Amendment protection.

This argument cannot succeed for two reasons. First, the cases on which Defendant relies for the existence of a transformative use defense address the use of a Plaintiff's likeness – not just his name. *See Hoffman*, 255 F.3d at 1180 (image of actor used in magazine spread); *Comedy III*, 23 Cal. 4th at 405 (image of the three stooges used on t-shirt); *Kirby* , 144 Cal. App. 4th at 47 (image, dance moves, and catch phrase of singer used in video game); *Winter v. DC Comics*, 30 Cal. 4th 881 (2003) (image of musicians used in comic book); *Hilton*, 599 F.3d 894 (image of celebrity used on greeting card). This distinction is a meaningful one, as the reasoning of the cases

that articulate the transformative use defense depends on the visual nature of the transformation. For instance, in *Comedy III*, the California Supreme Court explained the test this way: "[W]hether the celebrity *likeness* is one of the 'raw materials' from which an original work is synthesized, or whether the *depiction* or imitation of the celebrity is the very sum and substance of the work in question. We ask, in other words, whether a product containing a celebrity's *likeness* is so transformed that it has become primarily the defendant's own expression rather than the celebrity's *likeness*." *Comedy III*, 25 Cal. 4th at 406 (emphasis added). The simple use of a name is not an act of expression in the way that the creation or alteration of an image is, and a name cannot be transformed while remaining recognizable in the way that an image can. Defendant has not explained, and the Court cannot see, how this test could be applied to an individual's name when his image is not also involved.

The second problem with Defendant's transformative use argument is that Mr. Fuller's name and identity are not part of the actual product Defendant is selling, as were the uses in *Comedy III*, *Winter*, *Hilton*, and *Kirby*. Here, the toys themselves do not depict or reference Mr. Fuller; rather, the name Defendant has given them, along with some items in Defendant's materials, reference Mr. Fuller. Defendant has cited, and the Court is aware of, no authority establishing that there is any First Amendment protection for the use of a celebrity's name, transformed or otherwise, to sell an unrelated product. Similarly, cases that do discuss the unauthorized use of a name or image to sell an unrelated product do not discuss any "transformative use" defense. *See, e.g.*, *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996) (basketball player's name used to sell cars); *Christoff v. Nestle USA, Inc.*, 47 Cal. 4th 468 (2009) (unauthorized use of model's likeness to sell coffee).

Indeed, a transformative use defense would be illogical in this context. Defendant relies on two phrases from *Comedy III* as articulations of the transformative use test: "whether the depiction or imitation of the celebrity is the very sum and substance of the work in question," 25 Cal 4th at 406, and "[w]hen the value of the work comes principally from some source other than the fame of the celebrity – from the creativity, skill, and reputation of the artist – it may be presumed that sufficient transformative elements are present to warrant First Amendment protection." *Id.* at 407.

**United States District Court**
For the Northern District of California

But Defendant has taken these phrases out of context. Plaintiff's claim is that Mr. Fuller's name and identity have been used to sell an unrelated product. Unlike a product that is itself a depiction of a celebrity, such as a T-shirt bearing a picture of the celebrity, an unrelated product endorsed by a celebrity would not be *expected* to derive its primary value from a celebrity's identity. Thus, the fact that the product does not derive its primary value from the endorsement is not evidence of transformation. It is the nature of an endorsement that the product endorsed has its own value, and that the endorsement serves merely to boost consumer interest or trust. If this fact could render the use of a celebrity's name "transformative" and thus protected by the First Amendment, it would vitiate California's well-established right of publicity and the protections of the Lanham Act. Accordingly, the Court finds that a "transformative use" argument cannot defeat Plaintiff's claim that Mr. Fuller's right of publicity has been violated by Defendant's use of his identity to sell desk toys.

Defendant further argues that it uses the term "buckyballs" "in connection with a *molecular compound* that is – as a matter of historical fact – named after a celebrity." Mot. at 9. But as explained above, whether the product is named for the man or the molecule is a question of fact not suitable for resolution on a motion to dismiss. Thus, to the extent that Defendant's argument relies on this predicate, it cannot succeed at this stage of the litigation.

Finally, Defendant attempts to raise concerns about the consequences of allowing recovery for a Plaintiff whose name also has an independent meaning as a common noun. Mot. at 11. But these concerns are unfounded. In this case, Plaintiff has alleged – with reference to Defendant's website and the contents of one of Defendant's books – that Defendant's use of "Bucky" refers to Mr. Fuller, not to the molecule. This case thus need not establish anything about situations where there is no evidence that use of one of these dual-meaning terms refers to anything but the common noun. Plaintiff has not sued any of the many entities who have published works containing the word "buckyballs" where it clearly refers to a carbon-60 molecule, nor does Plaintiff argue that such use should not be allowed. Thus, Defendant's predictions of dire results simply are not credible.

In sum, the Court finds that the transformative use defense is inapplicable to the present situation, where Plaintiff's name is allegedly being used to sell an unrelated product. Accordingly, Defendant's motion to dismiss on transformative use grounds is DENIED.

**B. State law claims: Common Law and Statutory Rights of Privacy**

California has long recognized a right to protect one's name and likeness against appropriation by others for their advantage. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (citing *Eastwood v. Superior Court*, 149 Cal.App. 3d 409, 416, (1983)). California law provides two vehicles for asserting such a right: a common law cause of action for commercial misappropriation, and a statutory remedy for commercial misappropriation under California Civil Code §§ 3344 (living persons) and 3344.1 (deceased persons).[2]

The California Supreme Court has held that the common law cause of action for misappropriation does not apply to deceased persons. *See Guglielmi v. Spelling-Goldberg Productions*, 25 Cal.3d 860 (1979); *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 823 (1979); *see also Comedy III*, 25 Cal. 4th at 391-92. Defendant has not moved to dismiss the common law claim on this basis. "The fact that a dismissal was not requested, however, does not make it improper. 'A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim. . . .'" *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988) (quoting *Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981)). As there is no dispute that Mr. Fuller passed away some years ago, *see* Compl.at ¶ 1; Mot. at 4, Plaintiff cannot possibly prevail on a common law claim that requires the person whose identity is being used to be living. Further, at the hearing on November 1, Plaintiff could provide no reason why the common law claim should not be dismissed. Accordingly, Plaintiff's second cause of action for "Invasion of Privacy – Appropriation of Name" is hereby DISMISSED.

However, the legislature enacted Cal. Civil Code § 3344.1 to provide a remedy for the misappropriation of the name of likeness of a deceased person not available under the common

---

[2] The two statutes require proof of the same elements. *See Comedy III*, 25 Cal. 4th at 392 ("The statute was evidently modeled on section 3344: many of the key provisions of the two statutory schemes were identical."). Accordingly, the Court finds cases interpreting § 3344 to be relevant to the analysis under § 3344.1.

law. *See Comedy III*, 25 Cal. 4th at 391-93. Accordingly, the Court will consider Defendant's arguments that Plaintiff's § 3344.1 claim should be dismissed.

**1. Statute of Limitations**

Defendant argues that the statutory misappropriation claim is subject to a two-year statute of limitations under California Code of Civil Procedure § 339, and since Defendant's product bearing the name "buckyballs" was first used in commerce on March 1, 2009, that the statute of limitations had run before Plaintiff filed this action on May 18, 2012. Specifically, Defendant argues that the "single publication rule" applies. Accordingly, Defendant argues, the statute of limitations began to run when Plaintiff had actual or constructive notice that Defendant was using Mr. Fuller's name, and the cause of action does not accrue anew each time Defendant prints a package that says "Bucky" on it. The parties appear to agree that the two-year limitations period applies here. Though the Court could find no cases discussing the limitations period applicable to § 3344.1, the California Supreme Court has applied a two-year period to a right-of-publicity claim under § 3344; thus, the Court agrees that the limitations period for Plaintiff's § 3344.1 claim is two years. *See Christoff*, 47 Cal. 4th at 474; *see also Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001) ("The statute of limitations for infringement of the right of publicity in California is two years.").

The so-called single publication rule is codified in California Civil Code § 3425.3, which provides that:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

Cal. Civ.Code § 3425.3. The single publication rule applies to claims for misappropriation of name or likeness. *See Christoff*, 47 Cal. 4th at 476 ("We agree that, in general, the single-publication rule as codified in section 3425.3 applies to causes of action for unauthorized commercial use of likeness."); *see also Alberghetti v. Corbis Corp.*, 713 F.Supp.2d 971, 979 (C.D. Cal. 2010) *aff'd in part, rev'd in part on other grounds*, 476 Fed.Appx. 154 (9th Cir. 2012). The

question, then, is whether Defendant's sale of its "Bucky" products constitutes a single publication for purposes of this rule.

The California Supreme Court addressed a similar question in 2009 in *Christoff*. 47 Cal. 4th at 468. In *Christoff*, a model sued a food company for unauthorized use of his image on a product label. The Court held that "whether Nestlé's unauthorized use of Christoff's image, including its production of the label, constituted a 'single publication' within the meaning of the single-publication rule" was a factual question that required examination of the evidence in the case. 47 Cal.4th at 476. Although the majority did not explain what sorts of considerations would be relevant, Justice Werdegar did provide some guidance in a concurring opinion:

> The trial court should consider as well whether the production and distribution of labels was predetermined by a single initial decision or whether defendant (that is, the officers or managing agents of defendant corporation) made at any relevant time a conscious, deliberate choice to continue, renew or expand the use of labels bearing plaintiff's misappropriated image. If any such decisions occurred during the period defined by the statute of limitations, plaintiff should be able to recover damages caused by publication pursuant to those decisions.

*Christoff* , 47 Cal. 4th at 486 (Werdegar, J., concurring). Judge Wilson of the Central District of California applied this test in a portion of a decision that was affirmed by the Ninth Circuit. *See Alberghetti*, 713 F.Supp.2d at 979. Here too, the question of Defendant's decisionmaking process cannot be resolved at this stage of the litigation, without the benefit of evidence. Plaintiff has alleged that Defendant's actions have harmed him "[b]eginning at an exact date unknown to Plaintiff but at least since 2009," Compl. at ¶ 53; that Plaintiff granted Defendant a license for the use of Mr. Fuller's name and likeness for a period in 2011, *id.* at ¶ 12; and that Defendant has introduced a range of products beyond the original Buckyballs that also bear Mr. Fuller's name. *Id.* at ¶ 14. Some of these actions by Defendant may have occurred within the two-year limitations period. Thus, these allegations are sufficient to state a viable claim that Defendant committed an independent act of publication violating Plaintiff's right of publicity within the two-year limitations period. Accordingly, Defendant's motion to dismiss on statute of limitations grounds is DENIED.

**2. Public Affairs/Newsworthiness**


Defendant argues that Plaintiff's statutory claim must be dismissed under the exception laid out in subsection (j) of § 3344.1, which provides that "the use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required under subdivision (a)." The statute for living persons, § 3344, contains an identical exception. *See* Cal. Civ. Code § 3344(d). Defendant also separately argues that both the statutory and common law claims should be dismissed under a common law "Public Interest" defense, under which "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995). However, Courts have generally treated the two defenses as requiring proof of the same elements, with the statutory defense applying to statutory publicity claims and the common law defense to common law publicity claims. *See, e.g.*, *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001) (applying the statutory public affairs defense to a § 3344 claim and a coextensive common law public interest defense to a common law publicity claim); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536 (1993) (same). In other words, California courts do not apply a common law public interest defense, separate and apart from the statutory public affairs defense, to statutory right of publicity claims. Defendant acknowledges that the statutory and common law defenses are, in essence, the same, as "the statutory public affairs exemption [requires] the same type of activity as the public interest defense." Mot. at 15. Further, Defendant presents no new arguments in favor of a common law defense, relying instead on the arguments already made in support of a statutory defense. Thus, the Court need not consider the two defenses separately. Since the common law claim has been dismissed, the Court will frame discussion in terms of the statutory defense, which applies to the remaining § 3344.1 claim.

Defendant argues that its use of the term "Bucky" is protected under § 3344.1(j) because it is a matter of public affairs. Plaintiff disputes that Defendant's use of the name "Bucky" constitutes a "news, public affairs, or sports account or political campaign" as defined by the statute. Opp'n at 11-12. Though the parties cite, and the Court has found, no cases interpreting §

3344.1(j), there are myriad cases interpreting the identical provision in § 3344(d), and the reasoning of those cases applies equally here.

As this Court explained in *Fraley v. Facebook*, the use to which Defendant puts the information, in addition to the content of the information itself, bears on whether the statutory exception can apply:

> "[E]ven if the underlying actions taken by Plaintiffs are newsworthy, Plaintiffs assert that Facebook's *commercial use* of those actions. . . removes them from the scope of § 3344(d)'s newsworthy privilege. The Court agrees. Because Facebook's publication of Plaintiffs' 'Likes' is alleged to be for commercial advertising purposes and not part of "any news, public affairs, or sports broadcast or account, or any political campaign," the Court does not find it appropriate to dismiss the claim under the newsworthiness exception provided in § 3344(d)."

830 F.Supp.2d 785, 805 ( N.D. Cal. 2011). The Ninth Circuit has explicitly held that the use of information which may itself be said to be "newsworthy," and thus potentially fall within the exception, is "not automatically privileged," and is not protected under the statutory public affairs exception when used in an advertisement. *Abdul-Jabbar v. General Motos Corp.*, 85 F.3d 407, 416 (9th Cir. 1996). Thus, the defense simply does not apply when Defendant is using the information to sell a product, rather than to inform or entertain.

Here, Plaintiff has alleged that Defendant's use of Mr. Fuller's name and identity are "for purposes of selling and advertising" and "increasing sales of BuckyBalls" – not in any broadcast or account, and not in a political campaign. Compl. at ¶¶ 47-48. The Court accepts these allegations as true for the purpose of the motion to dismiss. Accordingly, the Court need not decide whether Defendant's references to Mr. Fuller are newsworthy. Even if they are, the public affairs exception to § 3344.1 cannot bar Plaintiff's claims at this stage, since Plaintiff has alleged that Defendant's use is commercial. Defendant's motion to dismiss the § 3344.1 claim on these grounds is DENIED.

**3. Ownership of the term "Buckyballs"**

Defendant's final argument that the statutory right of publicity claim must be dismissed is that Plaintiff has not registered any rights as a successor in interest specifically in the name "Buckyballs." Mot. at 16. Plaintiff has alleged that it has a valid registration in the name "Bucky

United States District Court
For the Northern District of California

Fuller." Compl. at ¶ 10. Thus, Defendant's argument is tantamount to a claim that the registered name, and only the registered name, without being altered in any way or combined with any other terms, can be protected under § 3344.1. But this is not the law. As the Ninth Circuit has explained, "[t]he statute's reference to 'name or likeness' is not limited to present or current use" and whether use of a variation on the Plaintiff's name is sufficient to establish a violation "is a question for the jury." *Abdul-Jabbar*, 85 F.3d at 415-16. Accordingly, Defendant's argument that Plaintiff's nonregistration of the specific term "buckyballs" precludes recovery under § 3344.1 fails, and Defendant's motion on these grounds is DENIED.

**C. Lanham Act: Nominative Fair Use**

Plaintiff contends that Defendant's unauthorized use of Mr. Fuller's name violated the Lanham Act because "[t]he public is likely to conclude that the use of Bucky's name and the references to him in Defendant's print and website material signifies Plaintiff's endorsement or approval of BuckyBalls." Compl. at ¶ 31. Defendant moves to dismiss on grounds that the reference to Mr. Fuller constitutes nominative fair use, as defined by the Ninth Circuit, of Mr. Fuller's name. Mot. at 17. A commercial user is entitled to the nominative fair use defense if it meets three requirements:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). For example, in *New Kids on the Block*, a pop music group sued a newspaper publisher for printing a survey in which it asked which of the five members of the band readers preferred. *Id.* The band alleged that the newspaper's using of its name, New Kids on the Block, constituted trademark infringement. *Id.* The court disagreed, finding that the newspaper was within its rights to refer to the group by its name, even if that name was a registered trademark, provided the three factors laid out above were satisfied. *Id.*

In this case, the "product or service" is Mr. Fuller himself, and the "trademark" is his name. *See Cairns, et al. v. Franklin Mint Co. et al.*, 292 F.3d 1139, 1152 (9th Cir. 2002) (Princess

United States District Court
For the Northern District of California

Diana is a "product" and her name and likeness are "marks"). In other words, Defendant is arguing that it cannot be held liable for using Mr. Fuller's name to talk about Mr. Fuller, because there is no other way to reference him.

The claim cannot be dismissed on the basis of this defense. The third factor – that the user must do nothing that would suggest sponsorship or endorsement – is dispositive here. Plaintiff has specifically alleged that Defendant's use of Mr. Fuller's name is "likely to cause confusion among the general public about Plaintiff's endorsement of Defendant's product. In particular, consumers are likely to believe that BuckyBalls are authorized, sponsored, approved or otherwise related to Plaintiff and its licensees, when in fact they are not." Compl. at ¶ 23. Because the Court takes allegations in the Complaint as true for purposes of a motion to dismiss, the Court assumes that Defendant's conduct did in fact suggest sponsorship or endorsement by Mr. Fuller. Thus, the third element of the defense cannot be established, and the complaint cannot be dismissed on these grounds.

**D. Unfair Business Practices**

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Plaintiff has alleged violations under all three prongs. *See* Compl. at ¶ 54.

Defendant has only one argument for dismissing Plaintiff's claim under the UCL: that Plaintiff has not stated a claim for violation of any other law, and thus has not alleged conduct that is "unlawful" for purposes of the UCL. *See* Mot. at 20. This argument fails. As explained above, Plaintiff has alleged facts sufficient to withstand a motion to dismiss on the § 3344.1 and Lanham Act claims, and has thus stated a claim under the "unlawful" prong. Plaintiff has also alleged that Defendant's use of Mr. Fuller's name was misleading to the public and therefore fraudulent, and that Defendant's practices were unfair in that their harm to Plaintiff outweighed any utility. *Id.* Thus, Plaintiff has alleged facts that, if proven, could establish liability under all three prongs of the UCL. Accordingly, Defendant's motion to dismiss Plaintiff's UCL claim is DENIED.

Case5:12-cv-02570-LHK Document27 Filed11/05/12 Page17 of 17

**United States District Court**
For the Northern District of California

**V. Conclusion**

The Court has found that Plaintiff's common law claim for appropriation of name and likeness cannot succeed as a mater of law, and must be dismissed. Defendant has not established that any of Plaintiff's other claims fail to state a viable claim for relief. Accordingly, Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: November 5, 2012

LUCY H. KOH
United States District Judge

17

Case No. 5:12-CV-02570-LHK
ORDER DENYING MOTION TO DISMISS